IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ALFRED ISAAC,

       Petitioner,

v.                                       CASE NO. 1:11-cv-206-WS-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

       This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition.")  The Petition stems from Petitioner's Alachua County, Florida, convictions for sale of cocaine within 1,000 feet of a community center, and possession of cocaine, for which Petitioner is serving a thirty-year sentence in the Department of Corrections.  Respondent filed a response and an appendix with relevant portions of the state-court record.  Doc. 14.  Petitioner has filed a reply.  Doc. 23.  Upon due consideration of the Petition, the response, the reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

       The relevant portions of the record may be summarized as follows.  Prior to trial, Petitioner rejected a plea offer from the state for a total three-year sentence on his

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

charges.  After proceeding to trial, on May 18, 2007, Petitioner was convicted of one

count of sale of cocaine within 1,000 feet of a community center, and one count of

possession of cocaine.  Respondent's Exhibit, hereafter "Ex." A at 40.  Petitioner was

sentenced to thirty years imprisonment on count one, and five years imprisonment on

count two, to run concurrently.  Ex. A at 42-44; 49-51.  After appeal, Petitioner's

convictions and sentences were affirmed *per curiam* without opinion.  Ex. J; *Isaac v.*

*State*, 6 So.3d 57 (Fla. 1st DCA 2009.)

Petitioner filed a postconviction motion pursuant to Fla. R. Crim. P. 3.850,

asserting, among other grounds, that his trial counsel rendered ineffective assistance

by failing to advise him that if he rejected the State's plea offer and was convicted at

trial he faced a possible thirty year sentence.  Ex. O at 1-35.  The state court ordered

an evidentiary hearing on this one ground of his motion and appointed postconviction

counsel for Petitioner.  The postconviction court summarily denied the other ten

grounds for relief in the motion.  Ex. O at 37-51.  Following the evidentiary hearing, the

court denied Petitioner's remaining claim of ineffective assistance.  Ex. O at 62-63.

Petitioner appealed the denial of the motion.  Ex O at 65-66.  The First DCA *per curiam*

affirmed the postconviction court's non-summary denial of Petitioner's first claim on

which there had been an evidentiary hearing, and the summary denial of Petitioner's

eleventh claim in his 3.850 motion, but reversed the summary denial of Petitioner's

grounds two through ten because the court identified nine documents attached to its

order, but had not actually attached them.  Ex. V.  The First DCA remanded with

instructions to attach the portions of the record referenced in its order as to claims two

through ten, or to conduct an evidentiary hearing on those claims, if necessary.  *Id*.

Petitioner filed a motion for rehearing, which was denied, and the mandate issued on

October 14, 2010.  Ex. X.  On remand, the postconviction court attached the relevant

portions of the record and denied grounds two through ten for the reasons stated in its

previous order.  Ex. Y.  Petitioner did not appeal the denial of these grounds.  *Id*.

Petitioner then filed the instant habeas corpus petition, which Respondent

concedes is timely.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all

state court remedies that are available for challenging his conviction, either on direct

appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion

requires that prisoners give the state courts a "full and fair opportunity" to resolve all

federal constitutional claims by "invoking one complete round of the State's established

appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful opportunity to

"pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v.

Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is

obvious that the unexhausted claim would now be procedurally barred under state law,

the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir.

1999).  Federal habeas courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at 1302, 1306.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); see § 2254(e) (1).  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow*, ___ *U.S.* ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them.") *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue.)

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.' " *Jones v. GDCP Warden*, ___ F.3d ___, 2014 WL 1088312, at *10 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, ___ U.S. ___, 134 S.Ct. 1697, 1702 (2014).  "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Jones*, 2014 WL 1088312, at *10 (alteration in original) (quoting *Williams*, 529 U.S. at 413).  The Supreme Court has interpreted §

2254(d) as requiring that, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 786–87 (2011). "[A]n 'unreasonable application' of [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S.Ct. at 1702. In other words, Petitioner must establish that no fairminded jurist would have reached the Florida court's conclusion. *See Richter*, 131 S.Ct. at 786–87; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir.2012). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S.Ct. at 786.

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable." *Gill*, 133 F.3d at 1290.

<u>**Standard of Review for Ineffective Assistance Claims**</u>

The highly deferential standard of Section 2254 carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a

common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Burt*, 2013 WL 5904117, *4 (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976.)  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted.)  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.  AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt*, 2013 WL 5904117, *4 (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011.))  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

S.Ct. at 786).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786.)

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Harrington*, 131 S.Ct. at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

In *Missouri v. Frye*, 566 U.S. ___, 132 S.Ct. 1399 (2012), and *Lafler v. Cooper*, 566 U.S. ___, 132 S.Ct. 1376 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. *Frye*, 566 U.S. ___, 132 S.Ct. at 1404–08; *Lafler*, 566 U.S. at ___, 132 S.Ct. at 1384.  Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during plea negotiations.  *Lafler*, 566 U.S. at ——, 132 S.Ct. at 1384 (internal quotation marks omitted).  The Court also considered how to apply the prejudice prong of the ineffective-assistance-of-counsel test set forth in *Strickland* and concluded that, in order to show prejudice, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing

to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence.  *Frye*, 566 U.S. at ___, 132 S.Ct. at 1409; *Lafler*, 566 U.S. at ___, 132 S.Ct. at 1384–85.

## Discussion

### Grounds Two and Three Are Unexhausted

Respondent argues that grounds one, two, and three are unexhausted.  In ground one of his Petition, Petitioner asserts that his convictions and sentence violate double jeopardy, "which also infected the trial setting."  He argues that he cannot be convicted of both simple possession, and sale of cocaine, because the two offenses arise from a "single transaction."  Doc. 1 at 4-6.   Respondent asserts that this ground is unexhausted because Petitioner should have presented it on direct appeal, but did not, and thus the claim is procedurally defaulted and due to be denied.  Petitioner's counsel filed an *Anders* brief on appeal, and thus did not raise this issue.  Ex. H.  Because Petitioner's counsel filed an *Anders* brief, Petitioner was given an opportunity to file a *pro se* brief on appeal, but declined to do so.  Ex. I.

In ground two, Petitioner alleges that his right to due process was violated because the prosecutor made assertions during his closing that Petitioner had failed to produce evidence to contradict the state's evidence, and had referred to the state's evidence as "uncontroverted."  Petitioner also argues that the state improperly vouched for one of their witnesses by stating that the witness was "straightforward and honest."  Doc. 1 at 7.  In ground three, Petitioner argues that his trial counsel was ineffective for failing to object to the prosecutor's improper conduct.  Doc. 1 at 11.

With respect to grounds two and three, Respondent contends that these claims are unexhausted and now procedurally defaulted because Petitioner did not appeal the denial of his 3.850 motion to the First District Court of Appeal, after it had been remanded to the trial court and the state court denied the remaining grounds in the motion again.  Petitioner admits in his reply that he failed to appeal, but argues that he "did not know that he was supposed to appeal those issues back to the D.C.A.," and was under the mistaken impression that the First DCA would "automatically respond."

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999.)  To satisfy the exhaustion requirement of federal habeas claims, a prisoner must first "fairly present" his claim to each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct the alleged violations of its prisoners federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). *Picard v. Connor*, 404 U.S. 270 (1971.)

The Court concludes that Petitioner has exhausted ground one because although he did not present it on direct appeal, Petitioner did present this claim as his eleventh claim in his 3.850 motion.  This ground was denied by the postconviction court and affirmed on appeal.  Because Petitioner presented this claim, it was denied and it

was affirmed on appeal, it is exhausted.  The Court finds, however, that grounds two

and three of his Petition are unexhausted because he did not present them to the

highest state court having jurisdiction.

With respect to ground three, although Petitioner argues that he did not

understand that he was supposed to appeal the trial court's denial of his Rule 3.850

motion back to the First DCA after it had been remanded, this argument does not

excuse his failure to do so.  Furthermore, a review of Petitioner's 3.850 motion reflects

that he did not bring his second claim at all in his 3.850 motion.  Petitioner raised ten

claims of ineffective assistance of counsel in his 3.850 motion, and one claim that his

conviction violated double jeopardy.  He did not bring a claim of prosecutorial

misconduct such as the one he now alleges in ground two of his federal Petition.

Accordingly, Petitioner's claims in ground two and three are unexhausted and,

therefore, are procedurally defaulted.

As discussed above, federal habeas courts are precluded from reviewing the

merits of procedurally defaulted claims unless the petitioner can show either (1) cause

for the failure to properly present the claim and actual prejudice from the default, or (2)

that a fundamental miscarriage of justice would result if the claim were not considered.

*Bailey*, 172 F.3d  at 1302, 1306.  A fundamental miscarriage of justice exists "where a

constitutional violation has probably resulted in the conviction of one who is actually

innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  Petitioner makes no

argument that he can establish cause and prejudice to overcome the default besides

his argument that he did not understand that he was supposed to appeal. And to the

extent Petitioner is attempting to assert a claim of actual innocence in order to escape the procedural bar of his claim, he is unable to do so.  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995.)  Petitioner alleges no new evidence to justify a claim of actual innocence, and furthermore, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390 (1993).  Petitioner has not raised a claim of any newly discovered evidence, and even assuming, *arguendo*, that Petitioner could raise a freestanding newly discovered evidence claim, it would fail because the he cannot show an independent constitutional violation which is "contrary to" or an "unreasonable application of" clearly established federal law.

 Accordingly, only Petitioner's double jeopardy claim in ground one, and ineffective assistance of counsel claim in ground four, properly exhausted by way of his Rule 3.850 motion and appeal, will be addressed on the merits.

### Ground One: Double Jeopardy

Petitioner contends that his convictions violate double jeopardy because he was convicted of two crimes that stemmed from a single act and the same quantum of cocaine.  Doc. 1.

Under settled Florida law, convictions and sentences for sale and possession of

the same quantum of cocaine do not violate double jeopardy because the greater offense of sale of a controlled substance does not *necessarily* include possession. *State v. McCloud*, 577 So.2d 939, 941 (Fla. 1991). In *McCloud*, the Florida Supreme Court upheld separate convictions and sentences for possession and sale of the same quantum of cocaine, noting that "offenses are separate if each offense requires proof of an element that the other does not, *without regard to the accusatory pleading or the proof adduced at trial.*" *McCloud*, 577 So.2d at 941.

This test comports with the familiar federal "same-elements" or "Blockburger" test. *See United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696. Although this court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of that state's own statutes. *Tarpley v. Dugger*, 841 F.2d 359, 364 (11th Cir.1988) (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

In this case, the state courts' interpretation of its statutes comports with the federal constitutional standard. Petitioner has failed to show that the state court's rejection of his double-jeopardy claim is contrary to, or an unreasonable application of, federal law.

**Ground Four: Ineffective Assistance of Counsel for Failing to Correctly Advise of the Maximum Penalty**

In Petitioner's fourth ground he argues that his trial counsel was ineffective for failing to correctly advise him that he could face a thirty-year sentence if convicted of his charges, which precluded him from making an informed decision on the state's plea bargain offer.  Petitioner presented this claim as ground one of his Rule 3.850 postconviction motion.  The state court held an evidentiary hearing on this ground alone, and issued a written opinion as to this ground which was *per curiam* affirmed by the First DCA.  Ex. V.

At the evidentiary hearing on this ground, Petitioner testified that he spoke with his counsel about his score sheet, and he remembered that his score sheet only scored him out to 44 months.  Ex. P at 75.  He recalled that this conversation took place "probably" sometime close to trial time.  Petitioner testified that his counsel  informed him that the state was offering him a three-year plea deal, and counsel advised him that if he took the plea he would know what time he was facing.  *Id*. at 77.  Petitioner stated that his counsel did not tell him what his maximum term of imprisonment was, but stated that the state would probably ask for ten years.  *Id*.  Thus, Petitioner understood that his maximum exposure was ten years at that time.  *Id*. at 78.  Petitioner also recalled that by the time he went to trial, the prosecutor in his case, Mr. Chang, said something about recommending fifteen years should Petitioner lose at trial.  Thus, by the time the trial occurred, Petitioner also was aware that a fifteen year sentence could be imposed.  *Id*.  Petitioner testified that he was informed of the state's plea offer for six

years, but he did not know of the possibility for a thirty-year sentence, and figured he

"had a good chance at winning." *Id*. at 79. Petitioner stated that if he had known of the

possibility of a thirty-year sentence, he would have taken the plea offer. *Id*. at 80.

On cross-examination, Petitioner admitted that he had previously won a

reduction in another sentence– from ten years to seven, because he had been

sentenced outside of the scoresheet and guidelines. Thus, he stated that he was

aware of the importance of the scoresheet and guidelines. *Id*. at 86, 89. He also stated

on redirect that he understood that the scoresheet was a summary of his prior history

and, with a point system that added up to give him a "basic look at what – how much

time you're looking at." *Id*. at 90.

Petitioner's trial counsel, Ray Cauthon, also testified at the hearing. He testified

that he did not specifically recall going over Petitioner's scoresheet or maximum penalty

with him. *Id*. at 96-97. Counsel specifically remembered meeting with Petitioner after

the state offered a three-year plea deal, and discussed it with him. *Id*. Counsel

testified:

> I was sort of trying to talk him into really considering doing three years,
> you know. And I told him at the time, you know, look, the only way you
> can control the outcome here, the only way you know what's going to
> happen for sure, is if you do the three years for each one. And he already
> had a good amount of credit time in, that kind of thing. So we did talk
> about that. He indicated he – he wished – he wanted to continue to go to
> trial in the case. I told him at that point that, you know, the state had
> stated, I believe, on the record at some point or had told me at some point
> that they would be asking for ten after trial. I told him in our conversation,
> I said, look, if you don't take the three, if you win at trial, you're done. If
> you lose at trial, the state's going to ask for ten and they're going to get it,
> you know. They're going to get ten.

*Id*. at 98-99.

Counsel testified that he did not tell Petitioner at this time what the maximum

statutory penalty was, apart from what the state would be asking for.  *Id*. at 99-100.

When asked why he did not, he stated that:

> Why I can tell you I didn't tell him that, is it didn't cross my mind at that
> point.  To me it was either he was going to do the three or we were going
> to go to the trial.  The ten was just in there to remind him that that's what
> the State had said they were going to ask.  I'll be completely frank with
> you: I would not have foreseen any circumstance him getting a 30-year
> sentence, given his guideline scoresheet, you know, at that time.  I realize
> that that was the maximum, but I just didn't think at that time, given his
> prior history, that he was, you know, going – it just didn't occur to me, I
> guess it what I'm saying.  So no, I did not talk with him about it at that
> particular time.

*Id*. at 100-101.

On cross-examination, counsel stated that he prepared a billing record in this

case, and the billing record indicated that he reviewed Petitioner's score sheet with him

on December 22, 2006.  *Id*. at 101-102.  He stated that he received the score sheet in

discovery, and the score sheet was admitted into evidence at the hearing.  *Id*. at 103.

Counsel stated that his standard discussion with his client about the score sheet

included the entire scoresheet and, included the maximum possible sentence.  *Id*. at

104.  However, he did not independently recall going over the scoresheet with

Petitioner.  *Id*. at 105.

In rejecting this claim on postconviction review, the state court wrote:

> At the evidentiary hearing, Defendant testified that, on the day of trial, the
> State offered to let him plea to three (3) years imprisonment.  Counsel
> advised Defendant of the offer, but then allegedly told Defendant that he
> was facing no more than ten (10) to fifteen (15) years imprisonment if he

were to lose at trial.  Because Defendant had only been sentenced under the guidelines in the past, he was purportedly unaware that the court could sentence him beyond a permitted range.  According to Defendant, based on the advice of counsel, he believed that the permitted range on his scoresheet was ten (10) to fifteen (15) years.  Balancing his options, Defendant chose to proceed to trial.

Former counsel testified at the hearing that all plea offers which were made by the State were timely conveyed to Defendant.  Though he does not explicitly recall discussing the statutory maximum penalty with Defendant, counsel does recall going over the scoresheet with him (which is reflected in his billing records as having occurred on December 22, 2006).  The scoresheet which they reviewed was submitted as evidence at the hearing.  Counsel further testified that he would have discussed the relevant maximum with Defendant at the time that they were reviewing the scoresheet (though he does [not] independently recall their discussion).

This Court finds the testimony of former counsel Ray Cauthon to be credible and the testimony of Defendant to not be credible.  The fact that counsel went over the scoresheet with Defendant is not in dispute.  And, it is clear from the scoresheet that Defendant was facing far more than ten (10) to fifteen (15) years imprisonment were he to be convicted at trial.  Furthermore, Defendant has an extensive criminal history, including previous terms of imprisonment in the Department of Corrections.  Given this background, Defendant's purported naivete lacks credibility.  Defendant fails to show that counsel misadvised him as to the maximum sentence.  Accordingly, his claim is without merit.

Ex. O at 62-63.

Thus, the state court found that counsel was not ineffective, because it found that counsel "would have discussed the relevant maximum with Defendant at the time that they were reviewing the scoresheet" *Id*.  In making this determination, the state court considered the credibility of both trial counsel and Petitioner.  "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by

them.'" *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)).  Questions about the credibility of a witness involve a question of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court." *Id.*  It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence.  *Burt v. Titlow, ___ U.S. ___,*  2013 WL 5904117, *4.

Petitioner has pointed to no evidence demonstrating why this Court should disregard the conclusion of the state court.  To the extent that Petitioner relies upon his own testimony to support his claim, Petitioner's testimony is wholly insufficient to rebut the state court's factual determination that Petitioner's testimony was not credible under the circumstances.  This credibility evaluation by the state court is also supported by the record in this case.  The evidence admitted at the 3.850 evidentiary hearing (before this court as Ex. R) shows that the score sheet discussed with Petitioner by his counsel clearly reflects a lowest permissible sentence of 82.05 months, and a maximum sentence of 75 years.  Ex. R.  This scoresheet, however, also included other charges against Petitioner, which were eventually dropped.  The scoresheet that Petitioner was actually sentenced under is a part of Ex. A, and it shows a lowest permissible sentence of 45.75 months, and a maximum possible sentence of 35 years.  Ex. A at 51.  This demonstrates that Petitioner –  who testified that he knew of the importance of his scoresheet –  was in fact aware of the stiff penalties that he could face if convicted.  Accordingly, Petitioner has failed to demonstrate that the state court's factual determination that counsel's performance was not constitutionally deficient was

incorrect.

Furthermore, even assuming, *arguendo*, that counsel was deficient for failing to discuss the maximum penalties, under *Frye* and *Lafler*, Petitioner is required to demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. *Frye*, 132 S.Ct. at 1409; *Lafler*, 132 S.Ct. at 1384–85. While Petitioner did establish at the 3.850 hearing that the plea deal would have resulted in a lower sentence, he has not established that he would have accepted the plea but for counsel's alleged ineffectiveness, or that the trial court would have accepted it. As Petitioner himself stated, he figured he "had a good change at winning." Ex. P at 79. This attitude – that Petitioner was intent to take his case to trial – is further supported by the testimony of his trial counsel, who stated that "it was either he was going to do the three or we were going to go to the trial." *Id*. at 100-101.

Petitioner has also failed to point to any evidence that the trial court would have accepted the plea offer, especially in light of the severity of the sentence actually imposed. Thus, not only has Petitioner failed to show that counsel was ineffective, but under *Frye* and *Lafler* the Petitioner has not demonstrated a reasonable probability that the result would have been different.

Accordingly, on this record, and in view of the deference afforded to the state court's rejection of this ineffective-assistance claim on the merits, the Court concludes that Petitioner has failed to show that he is entitled to federal habeas corpus relief.

**<u>Certificate of Appealability</u>**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

In light of the foregoing, it is respectfully **RECOMMENDED:**

1.   The Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be **DENIED.**

2.    A certificate of appealability should be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this 18th day of July 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.